LAMBERT BROS.

VS

PHILIP TROUNK

# 7302

NO. 7302

CHARLES F. CLAIBORNE, JUDGE.

April 22nd. 1918.

CHARLES F. CLAIBORNE, JUDGE.

This is a claim for the price of installing water and sewerage on defendant's property.

In April 1908 the defendant Throunk, purchased of one Woodruff two lots on Annunciation Street with the buildings thereon No. 6226 for the price of $500.00, with a right of redemption for five years. Woodruff continued to occupy the property as a residence with his wife. The improvements at the time of the sale, consisted of three rooms and a shed and stable to which Woodruff afterwards added a bathroom and a kitchen.

In 1915 the Board of Health ordered Woodruff to connect the improvements with the Water and Sewerage System. Woodruff made a contract with the plaintiff Lambert for the necessary connections. Lambert put them in. They consisted of a toilet, a bath-tub, a kitchen sink and regulation stable trap drain *and necessary connections* required by the Board of Health.

He charged $161.00, of which Woodruff paid $30.00, leaving a balance due of $131.00 for which Woodruff gave his note for a like amount with 8% interest and 20% attorney's fees, for which plaintiff asks judgment against defendant.

The defendant admits that he is the owner of the property, that Woodruff continued to reside on the property, but denies all the other allegations of the petition.

There was judgment for plaintiff and defendant has appealed.

The facts of the case are that Woodruff and Throunk were friends of 40 or 50 years standing. The latter was a man of some means; the former was not so fortunate. Woodruff had bought the above property through the homestead, had put improvements on it, but had defaulted in the payment of the price. Throunk explains how the transaction came about by saying:

128

"Well, I'll tell you:

I met him (Woodruff) in Mr. Kronenberge's office one day and he came to me and asked me, he says: "Mr. Throunk, will you let me have some money? "I said: "Well, yes, if it is not too much." I said: "how much do you want?" He says: I want about $500.00; I owe the homestead $50.00 and I am out of work and I can't pay it, and I want to pay it." So I thought the matter over and I said; "Woodruff, I can't lend you any $500.00 on your property, but I'll tell you what I will do to help you out. I will buy the property from you. You sell me the property outright for $500.00 and I will let you redeem it. I will give you 1, 2, 3, 4, or 5 years, if you want, to redeem it, and pay me 8% interest for my money when you redeem it; and all the money that I spend on it." He said: "That's all right", and I gave him the $500.00 and Mr. Kronenberger wrote up a title with that redemption clause on it."

The evidence shows that the $500.00 was applied in the manner following:

| | |
|---|---:|
| Cost of certificates &c Examination of title | $ 10.30 |
| Act of Sale and registry | $ 26.00 |
| State tax 1907 | $ 2.15 |
| City tax 1906 | $ 7.70 |
| City tax 1907 | $ 7.05 |
| Union Homestead | $ 73.44 |
| Check to Woodruff | $ 373.36 |
| | $ 500.00 |

Woodruff gives his understanding of the transaction as follows:

"I owed $50.00 on it (the property) and I had to borrow $500.00, and get the $50.00 to put me out of the homestead, and get along with, so I borrowed $500.00 and bought a horse and wagon xxx I thought I was (the owner of the property); I think I am yet, I gave a mortgage on the place; I did'nt sell it. I did'nt have any earthly thought that I was selling it. They did'nt tell me that. I asked for a mortgage, I did'nt ask for a sale."

Woodruff was allowed to remain in possession of the premises rent free and was still in possession at the time of this suit. He made whatever alterations or additions to them

that he pleased. Throunk visited the premises only once from the time he purchased it and never spend any money upon it. He paid all the taxes, but did not insure. The improvements are worth about $700.00.

Lambert sued Woodruff for the bill and obtained a judgment against him. It was only some time after that he discovered that Throunk was the owner and then brought this suit against him. The conduct of defendant justified Woodruff in believing that he was authorized to administer that property in the interests of himself and of the owner.

The installation of sewerage was not only an act of wise administration, but was a compulsory duty imposed by the law concerning which there was no option and which could not be avoided. Woodruff had not intended to impose the burden of its cost upon Throunk, but had assumed it himself by paying a portion, and giving his note for the balance.

In the aspect that this work was required by law, it differentiates this case from the line of authorities quoted by the defendant which say that "the lessee, to recover for repairs he has made, must show that xxx they were such as the lessor was bound to make. xxx owners of houses would soon be ruined if tenants xx could make repairs as their fancy or caprice might dictate." 1 H.D. 799 No. 10-4R 376. The owner was bound to make this work, nor was it an object of fancy on the part of Woodruff.

But even if controlled by the spirit of these decisions, a distinction must be drawn between those repairs and improvements which become a part of the building and cannot be separated from it, and which the owner is unavoidably compelled to retain, and those which form no part of the building or which may be detached from it.

When the owner retains the former he may not be liable for their value, because it is not in his power to separate them and to restore them. But as to the latter, he may restore them and release himslef from liability. But if he does not restore them, but retains them, he must pay for them. So an evicted possessor in bad faith cannot recover for improvements

130

inseparable from the soil, such as ditches, wells &c. //3 La 303

The owner is not bound to pay for other separable improvements; but if he retains them he must pay for them. 123La 24.

Neither is the lessor bound to pay for the additions which the lessee has put to the thing let; but if he retains them, he must pay for them. C. C. 2726 (2697).

. These general principles are embodied in the Articles 1816 (1810) and 1965 (1960) of the Civil Code.

Art 1816: "Actions without words, either written or spoken, are presumptive evidence of a contract, when they are done under circumstances that naturally imply a consent to such contract. To receive goods from a merchant without any express promise, and to use them, implies a contract to pay the value &c &c."

Art 1965: "The equity intended by this rule is founded in the xxx moral maxim of the law that no one ought to enrich himself at the expense of another &c &c."

Conceding that Woodruff was originally without authority to make the contract with Lambert so as to bind Throunk, yet Throunk must be held to have ratified it. As soon as he was informed of this claim against him, it was not enough for him to repudiate it. He should have notified Lambert at once, 22A 496 ; 24A 462, and offered to restore to Lambeth such of the articles as were susceptible of restoration. This he did not do. We are informed during the argument that Woodruff has surrendered possession of the property to Throuhk.

Throunk could not keep those articles, use them, and yet refuse to pay for them. By keeping them, he has ratified Woodruff's contract. Under the circumstances of this case ratification should be liberally construed 7 N.S. 145. 29a 752-

A principal cannot deny the right of an agent to issue a note for the price of an article and refuse to pay it, and yet have and possess the article. Slocomb vs Cage 22A 165; See also 2 C.J. 493;496;501 2 a 1015

Throunk had a right to elect within a reasonable time whether he would repudiate the contract made byn Woodruff

and restore the articles furnished by Lambert, or whether he would adopt it by retaining the articles. He has elected to keep the articles and he must pay for them. His ratification of part of the contract binds him for the whole. 2A 275;26A 26; 46A 315 (320) 105 La 768.

But we do not think that the defendant can be condemned to pay the interest nor the attorney's fees stipulated on Woodruff's note. He never agreed to this nor ratified it, nor was he benefited by it.

It is therefore ordered that the judgment of the District Court be affirmed in so far as it condemns the defendant to pay to the plaintiff the sum of One Hundred and thirty-one dollars with five per cent per annum interest from August lst. 1915 till paid with privilege on the property No. 6226 Annunciation Street, and that in all other respects said judgment be reversed and set aside.

It is further ordered that the defendant pay the costs of the District Court, and that the plaintiff pay the costs of appeal.

April 22nd. 1918.